Patricia **PRICE**, Nancy Campbell Lytton, and Agatha Overcash, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**CANNON MILLS**, a corporation, Defendant.

Civ. No. C–84–1012–S.

United States District Court, M.D. North Carolina, Salisbury Division.

Nov. 6, 1986.

Michael A. Sheely, Charlotte, N.C., for plaintiffs.

Susan Hartzoge, Kannapolis, N.C., Bruce L. Downey, Washington, D.C., and Max E. Justice, Charlotte, N.C., for defendant.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

This matter comes before the court on motion by the plaintiffs for class certification.

### PROCEDURAL BACKGROUND [1]

On 18 October 1984, the named plaintiffs filed a complaint alleging that the defendant, Cannon Mills, had engaged in both individual and classwide violations of Title VII in a number of employment practices. On 6 March 1986, the plaintiffs filed a motion for class certification.

Plaintiffs' complaint sought certification of a plantwide class of all current and former female employees with respect to the alleged Title VII violations. During the course of discovery, however, the parties entered into a stipulation that limited considerably the scope of the plaintiffs' individual and class claims. In addition, plaintiffs have limited the scope and number of the proposed classes to conform with evidence produced by approximately two years of discovery. *See* Plaintiffs' Modification of Class Certification Motion at 25–26, ¶ 88.A.

---

**1.** The procedural history of this case has been set forth in greater detail in an unpublished opinion, discussing the ruling on defendant's motion for summary judgment in this case, filed concurrently with this opinion. The background set forth here is confined to matters relevant to the pending class certification motion.

Plaintiffs' latest pleading seeks certification of a class composed of "plaintiff Lytton, all females currently employed in the Sheet Department [of Cannon Mills], all females employed in the Sheet Department at any time since July 26, 1980, but who are not currently employed at said facility; and all women employed in the future in the Sheet Department; all of whom have been, may have been, or will be discriminated against on account of their sex by the employer in the exercise of its employment practices of temporary job assignment, and pay for temporary job assignments." Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 43, ¶ 83. It is the class proposed in this most recent pleading filed by the plaintiff that the court addresses herein.

## DISCUSSION

### A. Plaintiffs' Proposed Sheet Department Class

In a sense, every Title VII suit is a class action inasmuch "as the evil sought to be ended is discrimination on the basis of a class characteristic, *i.e.*, race, sex, religion, or national origin," *Bowe v. Colgate Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969), and the courts have been acutely aware of the significant role the class action device can play in effectuating Title VII remedies. *Tolbert v. Western Electric Co.*, 56 F.R.D. 108, 114 (N.D.Ga.1972). The Supreme Court, however, has specifically rejected the idea that every Title VII case inherently warrants certification as a class action under Rule 23 of the Federal Rules of Civil Procedure. In *General Telephone Company v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Court tightened the requirements for class certification in Title VII cases by requiring trial judges to give scrupulous adherence to the prerequisites of Rule 23(a). *Id.* at 161, 102 S.Ct. at 2372. See *Nelson v. United States Steel Corp.*, 709 F.2d 675, 678–79 (11th Cir.1983). Although the Court agreed with the proposition that "racial discrimination is by definition class discrimination," 457 U.S. at 157, 102 S.Ct. at 2370, it held that the bare allegation of discrimination does not determine whether a class action may be maintained in accordance with Rule 23. The Court explained:

Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices.

457 U.S. at 157–58, 102 S.Ct. at 2370–71. See *Ardrey v. United Parcel Service*, 798 F.2d 679, 685 (4th Cir.1986).

Accordingly, in addition to presenting evidence relating to their own claims, the named plaintiffs herein must link their claims with those of the putative class by showing that the discrimination they allegedly suffered typlified a policy of sex discrimination that pervaded Cannon Mills employment practices of temporary job assignments and pay for temporary job assignments. *See Falcon*, 457 U.S. at 158, 102 S.Ct. at 2371. Moreover, the named plaintiffs carry the burden of demonstrat-

ing that class certification is appropriate. *Doctor v. Seaboard Coast Line R.R. Co.,* 540 F.2d 699, 707 (4th Cir.1976). Although the plaintiffs need not establish their own case on the merits before a determination of the class question can be made, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the plaintiffs must meet each of the prerequisites to the maintenance of a class action delineated in Federal Rule of Civil Procedure 23(a). Rule 23(a) provides that "[o]ne or more of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." These factors are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation" respectively.

In the case under consideration, the plaintiffs have failed to meet the typicality requirement imposed by Rule 23(a)(3) and thus have failed to establish their right to utilize the class action mechanism. Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The net result of this rule is that the propriety of class certification turns on whether the claim of the individual Title VII plaintiff and the claims of the Title VII class he purports to represent raise common questions of law or fact. *Lilly v. Harris-Teeter Supermarket,* 720 F.2d 326, 333 (4th Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984). Rule 23(a)(3) thus requires the plaintiff to demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff." *Tate v. Weyerhaeuser Co.,* 723 F.2d 598, 608 (8th Cir.1983), *cert. denied,* 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984); *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830

(8th Cir.1977), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). *See Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 268–71 (10th Cir.1975). In other words, a plaintiff must identify a class of persons who have legitimate Title VII claims that are similar to the claim of the named plaintiff. Such a requirement forces the plaintiff to come forward and identify persons "who had been subjected to the same or similar treatment as he allegedly suffered." *Donaldson,* 554 F.2d at 830. In essence then, the typicality test requires a plaintiff to demonstrate the seemingly obvious requirement that in order to maintain a class action, a plaintiff must first demonstrate the existence of a class.[2]

■ Plaintiffs' evidence fails to satisfy the typicality test. Other than the named parties, plaintiffs have failed to produce sufficient factual evidence of the existence of other employees in the Sheet Department of Cannon Mills who have been discriminated against in matters of temporary job assignments and pay for temporary job assignments. Plaintiffs, despite having worked for Cannon Mills for many years and despite having the records produced from approximately two years of discovery, continue to rely on cursory assertions of discrimination to show the existence of a class. It is necessary that plaintiffs make some affirmative showing beyond individual claims and general class allegations that discrimination has been suffered by the proposed class. *See Hopewell v. University of Pittsburgh,* 79 F.R.D. 689, 693 (W.D. Pa.1978). Plaintiffs have failed to make such a showing. Instead the plaintiffs, through counsel, have proposed the following findings of fact as evidence of the existence of, and of discrimination against, a class:

"(a) Women represent in excess of 80% of all employees in the Sheet Department. The percentage of women in the supervisory workforce is much less than

---

**2.** As Professor Moore pithly states: "By definition, an essential prerequisite to a class action is the existence of a class." 3B J. Moore, Moore's Federal Practice ¶ 23.04[1] (2d ed. 1985).

their percentage in the general workforce.

(b) After women finish their regular jobs, they are required to perform temporary assignments while men are not required to do anything.

(c) Specific Examples of Women Discrimination [sic] Against:

(i) Irene Wiles

(ii) Belinda _____

(iii) Nancy Lytton [plaintiff]

(iv) Hazel Fay Mason

(d) Specific Males Who Benefit

(i) Clyde Dunlap

(ii) George Deal

(iii) R. Raper

(iv) J. Moody

(v) J. Kennerley

(vi) F. Nesbit

(vii) D. Clayton

(viii) C. Brewer

(e) When Nancy Lytton did pallot jack operator job she got less than Graylen Brown, male, when he performed this job which was his regular job. The same was true when Lytton did the job of hauling waste.

(f) When Lytton and Hazel Fay Mason worked as "yarder doubler," Lytton's and Mason's rate per 100 was less than Max Neal's rate per 100.

(g) When Lytton, Frances Poole, and Debbie Russell (all female) weighed cloth, they were paid less than Charlie Ridenhour and Dale Stanback (both male).

(h) Shift supervisors (50% male; 50% female), acting on orders of department managers and assistant department managers (87.5% male), assign the temporary work. In some instances women are given such work after they finish their regular duties; males are not. It is common for women ... to be taken off their regular job and placed on temporary jobs even though their [sic] is still work to do

on their regular job. The women could have earned more if they were on their regular production jobs since when they are given temporary jobs, they are paid their production average or base rate which is lower than what could have been earned on production. This policy affects between 200–300 women.... Male employees are pulled off their regular jobs much less than women. When males are pulled off, they are much less likely to to be affected in terms of pay since their regular jobs are hourly, and if they are sent to a production job (which is unlikely) or a lower paying hourly job, they will get their regular pay rate."

Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 50–51. Considering the extensive discovery conducted and pleadings filed in this case, these general allegations[3] are clearly an insufficient factual showing to demonstrate the existence of a class, much less of a class so numerous as to make joinder impracticable.

Plaintiffs erroneously rely on the language of *Holsey v. Armour,* 743 F.2d 199, 217 (4th Cir.1985), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985) and *Lilly v. Harris-Teeter,* 720 F.2d 326, 332–33 (1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984), in an attempt to bootstrap class certification. Plaintiffs argue that in order to maintain a class action under prevailing Fourth Circuit law, a plaintiff need only show "sufficient identity of a numerous group of persons 'potentially affected' (*Holsey*) by the challenged practice or who 'may assert claims' (*Lilly*)." Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 49, ¶ 102. Plaintiffs assert that they need not identify individual victims of discrimination as proof of the merits of class certification. In this regard, plaintiffs misunderstand the scope of the *Holsey* and *Lilly* opinions. The cited portions of those opinions address how a

---

**3.** Plaintiffs offer no statistical evidence to support certification of a Sheet Department class. In support of classes proposed in earlier pleadings, plaintiffs utilized statistics in an attempt to show that defendant engaged in a pattern and practice of discrimination and that defendant thereby discriminated against a class. Plaintiffs appear to have abandoned those earlier class claims. See *infra,* "Plaintiffs' 'Other' Proposed Classes."

plaintiff proves "numerosity" under Rule 23(a)(1), not how a plaintiff ultimately proves the viability of class certification. A plaintiff in this Circuit must still satisfy the "commonality," "typicality," and "adequacy of representation" requirements of Rule 23(a) and must proffer proof to the trial court, especially where the plaintiff has the benefit of substantial discovery, that a class of discriminatees exists. Numerosity alone does not create a right. Given a purported class, the individual members must possess a right or rights. 3B J. Moore, Moore's Federal Practice ¶ 23.04[1] (2d ed. 1985). Plaintiff's interpretation of *Holsey* and *Lilly* would have the court allow Title VII plaintiffs to "simply leap from the premise that they were the victims of discrimination to the position that others must also have been," *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985), in clear abrogation of the Supreme Court's decision in *Falcon.* This court cannot so easily disregard the clear language of the *Falcon.*

In *Falcon,* the Court stressed that if "one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action." 457 U.S. at 159, 102 S.Ct. at 2371. The Court further observed:

In this regard it is noteworthy that Title VII prohibits discriminatory employment practices, not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer.

457 U.S. at 159, n. 15, 102 S.Ct. at 2371 n. 15. In other words, "the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff[s] may successfully maintain a class action. It is equally clear that [the plaintiffs'] attempt to prove the existence of a companywide policy, or even a consistent practice within a given department, may fail even though discrimination

against one or two individuals has been proved." *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 877–78, 104 S.Ct. 2794, 2800–01, 81 L.Ed.2d 718 (1984).

Finally, the result reached here today is equitable in light of the presented facts. First, plaintiff has been allowed to engage in extensive discovery to garner support for the class action claim. Where discovery has been completed "the decision whether the named plaintiffs should represent a class is appropriately made on the full record, including the facts developed [on] ... the plaintiffs' individual claims." *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 1898 n. 12, 52 L.Ed.2d 453 (1977). Discovery serves to eliminate "the imponderables that make the [class-action] decision so difficult early in litigation." *Id.* Indeed, once discovery has been completed in a promotion or pay discrimination case, the plaintiffs should be able to identify the class members with specificity. *Tolbert v. Western Electric Co.,* 56 F.R.D. 108, 114 (N.D.Ga.1972). The plaintiffs here, however, have been unable or unwilling to make such identification.

Second, it is only fair to Title VII defendants that courts follow the obvious rule that a court cannot allow a class action where there is no class, even in a Title VII case. Otherwise, opportunity for disgruntled employees to harass their employers abounds. The class action device should not become a weapon of revenge when the reason for the employee's discontent stems from either an isolated case of discrimination or from causes other than discrimination. *Arey v. Providence Hospital,* 55 F.R.D. 62, 68 (D.D.C.1972). The law of class actions was not designed to allow plaintiffs to engage in discrimination witchhunts and this court cannot allow the class-action device, especially considering its cost to individuals and the burden it places on the time and resources of the courts, to be abused.

Third, if other employees have suffered discrimination, our ruling today does not preclude these employees from instituting

any legitimate claims they may have against Cannon Mills or from even joining as named parties in this lawsuit. Under the rule of *Foster v. Gueory*[4], 655 F.2d 1319, 1321–22 (D.C.Cir.1981), individuals who are not class members may intervene in a Title VII suit without exhausting EEOC remedies if their claims are so close to the named plaintiff's claim that no further purpose would be served by requiring exhaustion.

### B. *Plaintiff's "Other" Proposed Classes*

Federal Rule of Civil Procedure 23(c)(1) requires this court to determine whether a class action is to be maintained as soon as is practicable after the commencement of an action. Accordingly, Local Rule 212(b) requires a plaintiff to file a separate motion for a determination of class certification under Rule 23(c)(1) within 90 days after the filing of a complaint in a class action. Here, plaintiffs requested that the court extend this 90 day filing deadline on six separate occasions. Ultimately, the motion for class certification followed the filing of the complaint by 504 days.

This court strongly disapproves of the lackadaisical manner in which the plaintiffs have pursued class certification. Dilatoriness in filing a motion for class certification has been held to constitute grounds for denial of the class certification motion[5]. *See, e.g., McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C.Cir.1984) (three year delay in moving for class certification "indisputably thwarted" fundamental fairness and warranted a denial of class certifica-

tion); *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 558–59 (5th Cir. 1981) (class certification denied due to plaintiffs' "negligence" in delaying their class certification motion for two years); *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927 (7th Cir.1972) (motion for class certification denied when plaintiffs waited three years after filing the suit to request class certification, defaulted twice in answering calendar calls, and filed "boilerplate" documents lacking in specificity).

The court chooses not to deny certification of plaintiffs' proposed Sheet Department class on the grounds of delay since plaintiffs requested and received extensions of time from the court for making the class certification motion. The court does, however, deny certification of all other classes proposed previously by the plaintiffs[6]. Indeed, plaintiffs appear to have abandoned previously proposed class claims in that plaintiffs did not propose any Findings of Fact or Conclusions of Law, as ordered by this court on 27 August 1986, as to classes other than the Sheet Department class discussed above. See Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 43–54, ¶ 83–116. Even if plaintiffs have not abandoned the earlier class claims, however, allowing plaintiffs to continue to advance these claims would violate two of the fundamental policies behind Rule 23(c)(1) and Local Rule 212(b). First, fundamental fairness, as well as the orderly administration of justice, requires that defendants haled into court not remain in-

---

**4.** Cited with approval in *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 335 (4th Cir.1983).

**5.** The basis of the rule that dilatoriness in filing a motion for class certification constitutes a ground upon which a trial court might deny certification is Federal Rule of Civil Procedure 23(a)(4). Rule 23(a)(4) provides that a named plaintiff may sue as a representative party on behalf of a class only if "the representative part[y] will fairly and adequately protect the interests of the class." The Supreme Court has held that lackadaisicalness on the part of the named parties in moving for class certification indicates that the named parties might not adequately "protect the interests of the class." See *East Texas Motor Freight System, Inc. v. Rodri-*

*guez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977) (dilatoriness in filing motion for class certification bears "strongly on the adequacy of representation that [the] class members might expect to receive").

**6.** In Plaintiffs' Proposed Findings of Fact and Conclusions of Law, plaintiff only discusses the Sheet Department class considered earlier in this opinion. In a footnote, plaintiff states that "the proposed class definition for Wet Finishing is the same a [sic] set forth in the *Response Of Plaintiffs Overcash and Price* at ¶ 87(2)(a) at p. 25 (filed 7-16-86) and Exhibit G attached to said *Response*. See also the Affidavit of Elaine Carothers which was mailed to the Clerk for filing on September 8, 1986."

definitely uncertain as to the number of individuals or parties to whom they may ultimately be held liable for money damages. That is particularly true where, as here, the defendants were facing either three named plaintiffs or a class of 200–300 plaintiffs. As stated previously, it is improper to allow plaintiffs to use the class action device as a discrimination witchhunt against an employer. Second, these rules foster the interests of judicial efficiency, as well as the interests of the parties, by encouraging courts to proceed to the merits of a controversy as soon as practicable. See *McCarthy*, 741 F.2d at 1412. Obviously, a court cannot divine clairvoyantly what claims plaintiffs wish to pursue when plaintiffs repeatedly file ambiguous and contradictory pleadings. Accordingly all classes, other than the Sheet Department class, previously proposed by the plaintiffs are denied[7] for failure to pursue with diligence class certification.

## CONCLUSION

IT IS, THEREFORE, ORDERED that plaintiffs' Motion for Class Certification is DENIED in all respects.

---

7. This opinion denies class certification of all classes, other than the Sheet Department class proposed in plaintiffs' most recent pleading, for failure to pursue with diligence class certification under Rule 23(a)(4). The court has, however, examined the classes proposed in earlier pleadings and has grave doubts as to plaintiffs' ability to demonstrate the propriety of certifying any of these earlier proposed classes even if plaintiffs had not been dilatory in pursuing certification.