**SOUTHERN STATES RACK AND FIXTURE, INC., Plaintiff,**

v.

**The SHERWIN–WILLIAMS COMPANY, Defendant.**

**No. C/A/ NO. 1:99–2726–17.**

United States District Court, D. South Carolina, Aiken Division.

Sept. 26, 2001.

Thomas E. Crafton, Esquire, Jeffrey R. Moorehead, Esquire, Crafton, Martin, Ogburn & Zipperle, PLLC, Louisville, KY, Richard A. Getty, Esquire, Getty, Keyser & Mayo, Lexington, KY, George Edward Mullen, Esquire, Mullen, Wylie & Seekings,

**490**

Charleston, SC, for Southern States Rack and Fixture, Inc.

William T. Jones, Esquire, Myrtle Beach, SC, Jack N. Sibley, Esquire, Robert S. Thompson, Esquire, Arthur Timothy Jones, Esquire, Carl H. Anderson, Jr., Esquire, Atlanta, GA, for Sherwin–Williams Company.

Jeffrey R. Moorehead, Esquire, Aiken, SC, for Keller Rigging & Construction.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

Plaintiff, Southern States Rack and Fixture, Inc., initiated this action against the Sherwin–Williams Company, contending that paint purchased from Sherwin–Williams was defective in that it rubbed off on tire racks fabricated by Southern States. The case was tried by a jury August 13 through 17, 2001. At the conclusion of the trial, the jury rendered a verdict for the defendant.

Plaintiff now returns to this court with a motion for a new trial, suggesting that this court erred in disallowing testimony of its expert, Dr. Geoffrey Byrnes, regarding his opinion as to the reasons for the paint failure. Alternatively, plaintiff contends that Dr. Byrnes' expert opinion constitutes newly discovered evidence justifying a new trial.

The matter has been fully briefed, and the court has determined that its earlier order disallowing the testimony should not be disturbed. Additionally, because the memoranda submitted by the various parties advance no arguments that have not already been presented to the court, the court has determined that Southern States' request for oral argument on the motion must be denied as well.

The evidence at trial disclosed that Southern States entered into a contract with Bridgestone/Firestone to produce a large quantity of fabricated metal tire racks to be used by Bridgestone/Firestone to hold newly-manufactured tires at its Aiken, South Carolina plant. An important requirement of the contract with Bridgestone/Firestone was that the paint on the tire racks not wipe off onto the tires, because any trace of paint, however slight, would cause the tires to be recalled. Southern States contracted with Sherwin–Williams to provide the paint to be used on the tire racks. After early tests disclosed that the paint rubbed off onto cloths wiped against the tire racks, Southern States was forced to employ a new method for painting the racks (spraying the tire racks with paint rather than dipping them in paint) and purchase a different type of paint to complete its contract.

In order to put the present controversy in its proper context, it is necessary to discuss briefly the procedural history of this case. The case was initially assigned to another judge in this district, who discovered, after the summary judgment briefs were filed, that he had a conflict of interest requiring recusal. The case was thereafter re-assigned to the undersigned district judge for trial. While the case was before the previous judge, plaintiff moved for the defendant to produce the formula for the paint in question. The previous judge ruled that the formula had to be produced, but that defendant had the right to insist upon a protective order as a prerequisite for the production of the paint formula. The judge instructed the parties to draft the protective order.

On the day of the pre-trial conference, the week before trial was to begin, plaintiff filed a motion to compel advising the court that the defendant still had not produced the formula. Defendant responded that it would produce the formula if and when plaintiff properly executed a consent protective order as previously ordered. A confidentiality agreement and protective order was eventually signed, and the formula was produced.

Plaintiff's expert, Dr. Byrnes, was deposed during the active discovery phase of this trial. At that deposition, he rendered an opinion and a written report. After receiving the formula shortly before trial, Dr. Byrnes prepared a supplemental written report containing essentially a second expert opinion, which was furnished to the defendant.

Byrnes was called as a witness on Wednesday, August 15, the third day of trial. When plaintiff tendered him as an expert, defendant requested the opportunity to conduct

voir dire on his qualifications. During this voir dire by defense counsel, Byrnes disclosed, for the first time, that he had formulated a new, *third* opinion the preceding Monday (the day the trial commenced). After extensive debate on the issue, the court determined that Byrnes' opinion should not be allowed.

After the jury returned its verdict, plaintiff's counsel interviewed one of the jurors. That juror explained the jury's verdict by saying that there were many possibilities for the paint failure, including not only a defect in the chemical composition of the paint, but also conditions that existed at the time of the spraying and the application process used. Armed with this information from a juror which suggests that the court's ruling on the expert opinion directly resulted in the verdict, plaintiff has requested a new trial.

At the outset, it should be noted that the late disclosure of Byrnes' "new" opinion was not the first time during this trial that plaintiff had failed to meet its disclosure obligations under the Federal Rules of Civil Procedure and the local civil rules for this district in a timely manner. For example:

The initial complaint claimed $250,000 damages, which did not include a component of lost profits. Plaintiff's responses to the local court-ordered interrogatories, in effect at the time, disclosed damages totaling $600,000, again with no reference to lost profits.

In the early part of 2001, while this matter was still pending before the previous judge, plaintiff sought, unsuccessfully, to amend its complaint to add additional theories. The purported amended complaint, which was never filed, retained the *original* damage itemization of $250,000.

Shortly before trial, counsel for the defendant learned that plaintiff was seeking to recover an additional $5 million in damages representing lost profits directly resulting from the failure of the paint at issue in this case. When this court queried plaintiff's counsel as to whether a proper disclosure of this component of damages had been made, counsel responded that the lost profits component had been disclosed to the defendant

at mediation. This completely overlooks the fact that the local rules for this district provide that nothing said at mediation shall be usable in a later trial. *See* Local Civil Rule 16.08(c), D.S.C. Moreover, a party cannot avoid this discovery response obligation, to say nothing of the mandatory disclosure requirements of this district, by simply mentioning a component of damages at mediation that completely dwarfs the original claims set out in the complaint and the Fed.R.Civ.P. Rule 26 interrogatory responses. The court granted defendant's motion in limine and disallowed the lost profits component of damages.

Plaintiff then sought, on the day of jury selection, to amend its interrogatory answers to add three additional witnesses on the issue of damages. The court disallowed the use of these late witnesses on damages.

Approximately two days before trial, plaintiff sought to supplement its damage discovery by furnishing to defendant a three-ring notebook approximately four to five inches thick containing documents itemizing the damage components. When defendant complained that it had never seen these documents before, plaintiff countered with a response that the documents were either duplicative or "summary" documents under Federal Rules of Evidence 1006. This court ruled that to the extent the documents were duplicative, they were not necessary and, alternatively, if they were to be deemed "summary" exhibits, there was no way that a "summary" of exhibits could comprise a notebook four to five inches thick. For this reason, the court disallowed the late documents.

At trial, plaintiff sought to have the jury escorted to the courtyard of the courthouse facility to view one of the tire racks in question. Defendant, noting that the tire rack itself had not been listed as an exhibit in plaintiff's pre-trial disclosures, nevertheless agreed to allow the jury to view the rack so that they would have a mental picture of the object under discussion at trial. Plaintiff then proposed that the jury be allowed to take a clean white cloth and wipe the towel rack to see if paint rubbed off, suggesting that this action would be a demonstrative

exhibit. Defense counsel loudly protested suggesting, quite properly, that such a procedure would not be a demonstrative exhibit, but would instead be in the nature of an experiment for which a substantial foundation would first need to be laid. The court agreed. After determining that no advance disclosure of the desire to conduct an experiment was given and plaintiff could not, in any event, establish that the conditions of the racks were substantially similar at the time of trial as they were at the time of the events in question, the court disallowed the wipe test proposed by the plaintiff.

Plaintiff's approach toward discovery and mandatory disclosure requirements is perhaps best summed up by the following passage in its memorandum submitted in response to a court request (that followed the summary judgment motion) that plaintiff provide additional information regarding its ever-changing damages theory. Plaintiff's counsel wrote:

At the trial of this matter, other exhibits may be introduced, the testimony of previously deposed witnesses may be clarified, and there will be live testimony from other witnesses that have not been deposed. The inquiries proffered by the court are putting the plaintiffs in the position of trying the damages portion of the case on the record evidence, which may be significantly different from the direct testimony and exhibit evidence admitted at trial.

With this background, the court turns to the expert opinion excluded at trial.

First, it should be noted that it is improper for a litigant to use the opinion of a discharged juror to attack a verdict. It has been this court's experience that jurors frequently tell lawyers what they wish to hear, and, in any event, plaintiff has only sampled the opinion of one of eight jurors who sat on this case. Nevertheless, the court will presume that its ruling excluding Dr. Byrnes' expert opinion had an effect on the ultimate verdict in this case.

That having been said, this court remains of the firm belief that its decision to exclude the testimony was proper. The Federal Rules of Civil Procedure, together with the local civil rules of this court promulgated to supplement the federal rules, clearly require the parties to make full, complete, and advance disclosures of evidence that will be used at trial. Nowhere is this more important than in the area of expert opinions. The Federal Rules of Civil Procedure provide for certain basic information that must be disclosed of all experts, and in this case, an expert opinion was rendered, and a discovery deposition taken, within the discovery deadline established by the previous judge's scheduling order.

When plaintiff sought production of the paint formula before the previous judge, he directed that the formula should be produced, but only after plaintiff consented to a protective order which would keep the precise chemical formula protected from disclosure to third parties. When the parties could not agree on the terms of the protective order, the matter was not formally presented to this court until the motion to compel was filed on the day of the pre-trial conference. The local civil rules for this district require that motions to compel discovery be filed within twenty days of discovery response. *See* Local Civil Rule 37.01 D.S.C. (requiring motion to compel discovery be filed within twenty days from the date of the allegedly inadequate response, or, if no response is filed, within twenty days from the date the response was due). Here, regardless of the fault of the parties over the drafting of the protective order, plaintiff did not bring the matter to the court's attention until the eve of trial. Nevertheless, the court granted the motion to compel, required the formula to be produced, and allowed Dr. Byrnes the opportunity to review the formula and formulate a new written report which was disclosed to the defendant. The court was initially inclined to disallow this new, second report, because it appeared that it was the plaintiff that had been dilatory in executing the consent protective order which delayed the production of the formula. In any event, because it appeared that defendant would be allowed sufficient time to prepare to meet the new opinion, the court allowed Dr. Byrnes' second written opinion, which was formed shortly before the trial began.

When it became apparent during defense voir dire of Dr. Byrnes that Dr. Byrnes had formed yet a third opinion on. the day the trial began, the court exercised its discretion to disallow this new opinion. As defendant observes in its memorandum in opposition to the motion for a new trial, this is not a case of late disclosure, this is a situation of *non*-disclosure. When asked why defense counsel was not apprised of Dr. Byrnes' most recent third opinion (formulated on the Monday the trial began), plaintiff's counsel could offer no substantive response.

Perhaps, even more importantly, Dr. Byrnes testified during voir dire that he formulated his third opinion relying not only on the chemical formula produced, but on the testimony and exhibits contained in the deposition testimony of defendant's expert Dr. Bernard Appleman. Dr. Appleman's deposition was taken in March 2001, but apparently was not transmitted to Dr. Byrnes until approximately two weeks before trial. Even so, Dr. Byrnes acknowledged that he did not look at the Appleman deposition or exhibits until the weekend prior to trial, and formulated his third opinion the following Monday.

■ The recent case of *Rambus, Inc. v. Infineon Technologies AG, et al.,* 145 F.Supp.2d 721 (E.D.Va.2001) provides the best discussion of the Fourth Circuit's application of Fed.R.Civ.P. 37(c)(1). Rule 37(c)(1) was added in 1993 to create a self-executing sanction for failure to comply with mandatory disclosures. The provision was amended again in December 2000 to include supplemental disclosures under Fed.R.Civ.P. 26(e)(1), which includes experts and their opinions. Rule 37(c)(1) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend the prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

The *Rambus* court identified five factors to guide a district court in exercising its discretion: (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony. *Id.* at 726.

It should be noted that the *Rambus* court rejected any test of bad faith or callous disregard of discovery rules before preclusion is available as a sanction. *Id.* at 727.

■ Application of the five *Rambus* factors to the present controversy easily yields the conclusion that Dr. Byrnes' third expert opinion (formulated on the day trial began and not disclosed to defense counsel until defense counsel conducted voir dire of Dr. Byrnes on the third day of trial) should have been excluded.

### Surprise to the Defendant

Obviously, Sherwin–Williams was surprised at this development. This is a case where twice the expert reported that he had completed his opinions—at his deposition on March 20, 2001, and again on August 6, 2001, in his supplemental report. The August 6 supplemental report did not indicate that Dr. Byrnes intended to do additional testing and issue yet additional reports.

### Ability of the Defendant to Cure the Surprise

As pointed out in *Rambus,* the ability to simply cross-examine an expert concerning a new opinion at trial is not the ability to cure. As this court pointed out in its oral ruling at trial, rules of expert disclosure are designed to allow an opponent to examine an expert opinion for flaws and to develop countertestimony through that party's own experts. Such was not possible here.

### The Extent to Which Allowing the Testimony Would Disrupt the Trial

As was true in *Rambus,* granting a continuance would significantly disrupt the scheduled trial of this case. As in *Rambus,* witnesses from distance places had testified and if the case were continued and tried again, much of the parties' trial preparation would be rendered obsolete.

Explanation of Plaintiff's Failure to Name the Witness Before Trial

In its motion for a new trial, plaintiff sets out a time table in an effort to explain why the opinion was formed so late. As the defendant observes, however, plaintiff cannot escape the fact that it failed to file a motion to compel twenty days after it knew Sherwin–Williams would not produce the formula as required in Local Civil Rule 37.01. More importantly, however, plaintiff cannot explain why it did not supplement its discovery responses when it knew of Dr. Byrnes' new, third opinion. As noted above, plaintiff *never* informed the defendant or this court of Dr. Byrnes' new opinion. It was presented at the trial when defense counsel conducted voir dire of Dr. Byrnes regarding his expert qualifications.

The Importance of the Testimony

The court agrees that the opinion of Dr. Byrnes that there was a defect in the paint formula renders the evidence important in terms of the case tried. As *Rambus* points out, however, this factor must be viewed from the perspective of both parties. The fact that the expert's testimony regarding the paint formula might have been helpful to the plaintiff's case in the eyes of the jury also points out why it should have been disclosed in a timely manner to the defendant.

For all the foregoing reasons, the court has determined that oral argument is not necessary and that the motion for a new trial should be denied.

IT IS SO ORDERED.