Denise P. EDWARDS

v.

The FIRST AMERICAN CORPORATION, et al.

No. CV 07–03796 SJO (FFMx).

United States District Court, C.D. California.

Nov. 30, 2012.

Cyril V. Smith, Robert T. Shaffer, III, William K. Meyer, Zuckerman Spaeder, Baltimore, MD, David Oakley, Edward G. Kramer, The Fair Housing Law Clinic, Cleveland, OH, Ezra D. Landes, James W. Spertus, Spertus Landes and Umhofer LLP, Los Angeles, CA, Katherine B. Bornstein, Gordon & Wolf, Chtd., Baltimore, MD, Martin E. Wolf, Richard S. Gordon, Quinn Gordon & Wolf, Towson, MD, for Denise P. Edwards.

Bradley A. Benbrook, Charles J. Stevens, Stevens O'Connell And Jacobs LLP, Sacramento, CA, Charles A. Newman, Celia Kate Douglas, Elizabeth Teutenberg Ferrick, SNR Denton U.S. LLP, St Louis, MO, Joel D. Siegel, Ronald D. Kent, Michael J. Duvall, Robert F. Scoular, SNR Denton U.S. LLP, Los Angeles, CA, Andrew Zachary Edelstein, Mayer Brown LLP, Los Angeles, CA, Margo Weinstein, Miller Shakman & Beem LLP, Chicago, IL, for The First American Corporation, et al.

**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANTS' MOTION TO DECERTIFY THE TOWER CITY CLASS [Docket No. 253]; DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION [Docket No. 254]**

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendants First American Financial Corporation ("FAFC") and First American Title Insurance Company's ("FATIC") (collectively, "Defendants") Motion to Decertify the Tower City (Ohio) Class ("Motion to Decertify") and Motion to Compel Arbitration ("Motion to Compel"), filed on April 25, 2011. Plaintiff Denise P. Edwards ("Plaintiff") filed her Memorandum in Opposition to Defendants' Motion to Decertify ("Decertify Opposition") and Memorandum in Opposition to Defendants' Motion to Compel ("Compel Opposition") on June 14, 2011 (ECF Nos. 310, 309), to which Defendants filed their Reply in Support of Motion to Decertify ("Decertify Reply") and Reply in Support of Motion to Compel ("Compel Reply") on June 21, 2011 (ECF Nos. 314, 315). Following a stay of the case, Defendants filed Supplemental Briefs in Support of their Motion to Decertify ("Supplemental Motion to Decertify") and Motion to Compel Arbitration ("Supplemental Motion to Compel") on October 15, 2012 (ECF Nos. 348, 347). Plaintiff filed Supplemental Briefs in Opposition to Defendants' Motion to Decertify ("Supplemental Decerti-

fy Opposition") and Motion to Compel Arbitration ("Supplemental Compel Opposition") on October 22, 2012 (ECF Nos. 357, 358.) The Court found this matter suitable for disposition without oral argument and vacated the hearings set for November 5, 2012, and November 19, 2012. *See* Fed.R.Civ.P. 78(b). For the following reasons, the Court **DENIES** Defendants' Motions.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff purchased a home in Ohio. Her title agency, Tower City Title Agency, LLC ("Tower City"), referred her to FATIC for title insurance. (Compl. ¶¶ 20, 25.) Plaintiff believes this referral was unlawful under the Real Estate Settlement Procedures Act ("RESPA"), which prohibits the exchange of "a thing of value" for title insurance referrals. 12 U.S.C. § 2607. Specifically, Plaintiff claims that FATIC purchased 17.5% of Tower City at an inflated price; in exchange, Tower City agreed to refer all future Ohio title insurance business "exclusively" to FATIC. (Compl. ¶¶ 15–16.) Further, Plaintiff alleges that FATIC purchased a minority interest in numerous other title agencies in exchange for referrals in violation of RESPA. (Compl.¶¶ 3, 21.)

Originally, Plaintiff moved to certify a class of customers referred to FATIC by any of the nearly 200 title agencies partially owned by FATIC. (Order Den. Pl.'s Mot. for Class Certification ("Class Certification Order I") 2, Dec. 10, 2007, ECF No. 74.) This Court found that this class was not maintainable under any provision of Rule 23(b). However, the Court granted Plaintiff leave to file a second motion for certification limited to customers of Tower City. (Class Certification Order I 5–6.) When Plaintiff brought her motion for certification of a Tower City Class, this Court again denied the motion, holding that common questions of law or fact did not predominate over individualized issues and a class action was not superior under Federal Rule of Civil Procedure ("FRCP") 23(b)(3). (Order Den. Pl.'s

Second Mot. for Class Certification (*See generally* "Class Certification Order II", June 6, 2008, ECF No. 126).) The Ninth Circuit, however, reversed that ruling in a Memorandum Disposition and ordered certification of the Tower City Class because "[w]ith respect to liability, there is a single, overwhelming common question of fact: whether the arrangement between Tower City and First American violated [RESPA]." (Mot. to Certify Nationwide Class Ex. A ("Mem. Disposition"), at 3, Nov. 12, 2012, ECF No. 370–1.) The Ninth Circuit also ordered that Plaintiff be allowed to conduct nationwide discovery to determine whether certification of a nationwide class is appropriate. (Mem. Disposition 2.)

Following discovery, Defendants filed the instant Motions on April 25, 2011.[1] The Court stayed the case after the Supreme Court granted certiorari. (Order Granting Stay, July 1, 2011, ECF No. 324.) The Supreme Court, however, then dismissed the writ of certiorari as improvidently granted. (Notice of Decision Ex. A, July 5, 2012, ECF No. 332.) The Court thus lifted the stay and now considers the pending motions.

## II. *DISCUSSION*

### A. *Legal Standard*

■ Under FRCP 23(c)(1)(C), an order certifying a class "may be altered or amended before final judgment." Fed.R.Civ.P. 12(c)(1)(C). "A district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indust. & Serv. Workers Int'l Union v. ConocoPhillips Co.,* 593 F.3d 802, 809 (9th Cir.2010). The party seeking decertification has the burden of establishing that the requirements of FRCP 23 have not been met. *See Gonzales v. Arrow Fin. Servs. LLC,* 489 F.Supp.2d 1140, 1153 (S.D.Cal.2007); *Slaven v. BP Am., Inc.,* 190 F.R.D. 649, 651 (C.D.Cal.2000). This burden is substantial, as "doubts re-

---

1. Defendants also filed a Motion for Judgment on the Pleadings. Plaintiff has filed a Motion to Certify a Nationwide Class. Defendants' Motion for a Judgment on the Pleadings has already been denied. (*See* Mins. of Status Conference, Sept. 24, 2012, ECF No. 344.) Plaintiff's Motion to Certify a Nationwide Class will be considered in a separate order.

garding the propriety of class certification should be resolved in favor of certification." *Gonzales,* 489 F.Supp.2d at 1154.

■ FRCP 23(a) requires that the party moving for class certification show the following prerequisites have been met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed.R.Civ.P. 23(a); *see Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir.2003). "[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The trial court is expected to engage in a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied. *Wal–Mart Stores v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quoting *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364). This rigorous analysis will often "overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal–Mart,* 131 S.Ct. at 2551. FRCP 23(b)(3) requires a showing that questions of law or fact common to the class "predominate" over questions affecting the individual members, and that, on balance, a class action is superior to other methods available for adjudication. *See* Fed.R.Civ.P. 23(b)(3). In addition to the express requirements of Rule 23, "there are implied prerequisites to class certification that the class must be sufficiently definite and ascertainable." *Galvan v. KDI Distrib. Inc.,* No. SACV 08–0999–JVS (ANx), 2011 WL 5116585, at *3 (C.D.Cal. Oct. 25, 2011).

## B. *Analysis*

Defendants contend generally that "new facts and law have arisen, requiring reassessment of the certification order and decertification of the class." (Mot. to Decertify 1.) Specifically, Defendants argue that decertification of the Tower City class is appropriate because (1) Plaintiff has abandoned the Tower City class by filing her motion for certification of a nationwide class; (2) new evidence demonstrates that Plaintiff and her counsel are inadequate under FRCP 23(a)(4); (3) new evidence demonstrates that the class is not ascertainable and that individual issues would predominate under FRCP 23(b)(3); (4)

the exclusive referral agreement between Defendants and Tower City was not truly "exclusive," thereby defeating common proof for the class; (5) individual arbitration is a superior form of adjudication under FRCP 23(b)(3); and (6) the class is impermissibly overbroad. (*See generally* Mot. to Decertify; Supplemental Mot. to Decertify.) The Court addresses each argument in turn.

### 1. *Plaintiff's Purported Abandonment of the Tower City Class*

■ Defendants first argue that Plaintiff has abandoned the Tower City class by (1) filing her motion to certify a nationwide class, which, if granted, would necessarily subsume the present Tower City class; (2) deferring notice to the Tower City class until after this Court ruled on Plaintiff's motion for nationwide class certification; and (3) not re-filing evidence from Plaintiff's prior motion for certification. (Mot. to Decertify 7.) These arguments are meritless.

The cases cited by Defendants in support of the proposition that Plaintiff has abandoned the Tower City class by seeking to certify a nationwide class are inapposite. In *Brotherson v. Professional Basketball Club, LLC,* 604 F.Supp.2d 1276, 1296 (W.D.Wash. 2009), the plaintiff **purposefully** abandoned two separate classes in favor of a single national class comprising both the original classes. *Id.* The court in *Price v. Cannon Mills,* 113 F.R.D. 66, 72 (M.D.N.C.1986), found that the plaintiff had abandoned its class claims because it failed to file proposed findings of fact and conclusions of law as ordered by the court. *Id.* Neither of these cases applies here. Furthermore, Plaintiff deferred notice to the Tower City class at the direction of the Court and not out of any dilatory intent. (*See* Tr. of Status Conference 5:19–21, Nov. 8, 2010, ECF No. 182.) Defendants' contention that the fact that Plaintiff did not re-file her evidence in support of class certification signals Plaintiff's intent to abandon the Tower City class is also without merit. As pointed out by Plaintiff, the Tower City class has already been ordered certified by the Ninth Circuit on the basis of evidence previously submitted. There was thus no need for Plaintiff to re-file

that evidence in support of her motion to certify a nationwide class.

Defendants further contend that, even if Plaintiff has not abandoned the Tower City class, that class is necessarily "limited to borrowers who purchased FATIC policies from Tower City only between June 12, 2006 and November 9, 2006"—the period of time during which the exclusive referral agreement was in effect. The Court agrees. In ordering the Tower City class certified, the Ninth Circuit relied on the exclusive referral agreement as the "common proof of the 'action' element of a referral." (Mem. Disposition 4.) It therefore follows that the class definition for the Tower City class is limited to the period of time during which the exclusive referral agreement was in effect. Defendant has introduced undisputed evidence that the referral agreement was only in effect until November 9, 2006. (Mot. to Decertify 8; Decl. of Todd A. Jones in Supp. of Mot. Decertify ("Jones Decl.") ¶¶ 2, 3; Exs. A, B, ECF No. 253–2.) As such, the Tower City class includes only those borrowers who purchased FATIC policies from Tower City prior to that date.

#### 2. *The Adequacy of Plaintiff and her Counsel*

■ Defendants next argue that Plaintiff and her counsel are inadequate for the purposes of FRCP 23(a)(4). A court may revisit the issue of whether the named plaintiff and her counsel are adequate "[i]f at any time ... it appears that for any reason the [named plaintiff] no longer fairly and adequately protect[s] the interests of the class...." *Social Servs. Union, Local 535, Serv. Emps. Int'l Union, AFL–CIO v. Cnty. of Santa Clara*, 609 F.2d 944, 949 (9th Cir. 1979). The Court considers Defendants' arguments with respect to Edwards and her counsel separately.

#### a. *The Adequacy of Edwards as Named Plaintiff*

■ Defendants' argument that Edwards is inadequate is primarily based on Edwards's testimony in an unrelated bankruptcy proceeding. Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class."

Fed.R.Civ.P. 23(a)(4). This requirement ensures that the named plaintiff and his or her counsel will pursue each class member's claim with sufficient "vigor." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir.1998); *see also Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1994) (citations omitted) (holding that "[a]dequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive"). As previously stated by this Court, however, "the Ninth Circuit places little importance on the named plaintiff's own legal knowledge and experience." (Class Certification Order II 4.)

■ Edwards testified at her bankruptcy proceeding that "I think maybe [Plaintiff's counsel] went on with someone else. I don't know if they followed through with it theirself [sic]...." (Decl. of Michael J. Duvall in Supp. of Defs.' Mot. to Decertify ("Duvall Decl.") Ex. E, at 6:13–15 ("Bankruptcy Proceedings"), Nov. 18, 2010, ECF No. 258.) Defendants contend that this testimony demonstrates that "[t]his case, being pursued in Plaintiff's name, is proceeding without her knowledge or consent and at her counsel's unfettered discretion." (Mot. to Decertify 9.) Plaintiff, on the other hand, argues that Edwards was and is aware of the proceedings in this case because Edwards listed this litigation as an asset on her bankruptcy schedules in the bankruptcy proceeding. (Decertify Opp'n 9.) Plaintiff has also submitted a new declaration from Edwards in which she avers that "[a]t the time of the bankruptcy proceeding, I thought not much had occurred in the Trial Court litigation following the appeal. It had been more than a year since the case had had any activity in the Trial Court." (Decl. of Denise P. Edwards in Supp. of Pl.'s Mot. for Nationwide Class Certification ("Edwards Decl. I") ¶ 9, Apr. 29, 2011, ECF No. 277–3.) Edwards also states that her counsel sent her the Ninth Circuit opinions ordering certification of the Tower City class and affirming this Court's denial of Defendants' earlier motion to dismiss. (Edwards Decl. ¶ 7.) Finally, Edwards states that she trav-

eled to Washington, DC, on November 27, 2011, to hear oral arguments in her case before the Supreme Court and that she "continue[s] to be not only interested in this case for [her] own sake, but also for the interests of anyone who may have been affected by the practices of [Defendants] which my lawsuit is challenging." (Decl. of Denise P. Edwards ("Edwards Decl. II") ¶¶ 5–7, 9, October 22, 2012, ECF No. 357–2.)

Edwards's testimony at the November 2008 bankruptcy proceeding is not sufficient to support a finding that she is inadequate to represent the interests of the Tower City class. Significantly, Edwards stated that she was aware that she was involved in this lawsuit when initially asked. (Bankruptcy Proceedings 5:21.) The fact that Edwards listed this lawsuit as an asset on her bankruptcy schedules also indicates that she was aware of its existence and her role in it. Furthermore, Edwards's apparent confusion about the status of the case is somewhat understandable given the torpid pace at which this litigation is proceeding. At the time of Edwards's bankruptcy testimony, the Ninth Circuit had recently ruled on the parties' appeals, and the Court had ten days before held a scheduling conference at which a plan for classwide discovery was set. (Mins. of Scheduling Conference, Nov. 8, 2010, ECF No. 187.) Prior to those events, however, almost nothing had transpired in this Court for well over a year in regards to this case. It is also not altogether surprising that Edwards had little knowledge about the scheduling conference given that it primarily concerned nationwide class discovery, which is inherently counsel-directed.

Finally, Edwards's new declarations that she is keeping abreast of the case now that it is moving again in this Court and that she is willing and able to serve as named Plaintiff—in conjunction with the fact that Plaintiff apparently traveled to Washington, DC to attend oral argument at the Supreme Court—all indicate that Edwards has "at least a rudimentary understanding of the nature of the present action and [she has] a demonstrated willingness to assist counsel in the prosecution of the litigation." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhe-*

*sives & Composites, Inc.,* 209 F.R.D. 159, 165 (C.D.Cal.2002). This evidence more than outweighs a page and a half of bankruptcy testimony in an unrelated proceeding. There is also no suggestion that Edwards's interests in this litigation do not align with the absent class members.

As such, the Court finds that Edwards continues to be adequate under FRCP 23(a)(4).

b. *The Adequacy of Edwards's Counsel*

■ Defendants also argue that Edwards's counsel is inadequate because (1) counsel engaged in improper solicitation of Edwards in violation of rules of professional conduct; and (2) counsel may have potential conflicts of interests in light of another case involving a putative class that may include some of the title agencies identified in Plaintiff's motion for nationwide class certification. (Mot. to Decertify 12.)

Edwards testified at her bankruptcy proceeding that "[t]hey [counsel] came to my house . . . [a]nd knocked on my door and said that I've been one of the citizens that has been wrongfully done to [sic]. . . ." (Bankruptcy Proceedings 5:24–6:1.) As established by Edwards's 2008 deposition, however, Edwards was first contacted by counsel via letter prior to any in-person contact. (Reply in Supp. of Mot. to Certify Class Ex. C, at 42:8–50:23, Apr. 8, 2008, ECF No. 277–3.) Edwards's bankruptcy testimony does not contradict her earlier deposition testimony; it only supplements it. This does not violate any rules of professional conduct. *See* Ohio Rule of Prof'l Conduct 7.3(a). Somewhat more troubling is the letter's failure to include notice that it is advertising material as required by Ohio Rule of Professional Conduct 7.3(c)(3). (Decl. of Michael J. Duvall in Supp. of Reply in Supp. of Mot. to Decertify Ex. A, ECF No. 314–2.) Nevertheless, there is no further indication that counsel used coercive tactics in soliciting Edwards, and the language of the letter itself does not make "false and misleading representations." Ohio Rules of Prof'l Conduct R. 7.3 cmt. 4. Indeed, it is entirely professional in tone. The Court therefore does not find that this conduct establishes that counsel is inadequate for the purposes of Rule 23(a)(4). *Cf.*

*Bodner v. Oreck Direct,* No. C 06–4756 MHP, 2007 WL 1223777, at *3 (N.D.Cal. Apr. 25, 2007) (denying class certification based on the inadequacy of class counsel when counsel "went in search of a plaintiff, never mind the lack of a fitting plaintiff or the lack of ethical scruples," indicating that "plaintiff's counsel constructed this lawsuit before it had a plaintiff").

Defendants' contention that class counsel is inadequate due to a potential conflict with putative class members in another action is without merit.[2] First, as noted by Plaintiff, Comment 25 to Model Rule of Professional Conduct 1.7 states that "[w]hen a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule." Model Rules of Prof'l Conduct R. 1.7 cmt. 25. Second, even if the other action did pose a potential conflict of interest, Defendants have produced no evidence that the putative class of title agents in the unrelated litigation includes the Tower City title agents at issue here[3]—instead, they base their argument only on "information and belief." This is plainly insufficient for the Court to order the decertification of the Tower City class.

In sum, the Court finds that both Edwards and Edwards's counsel are adequate under FRCP 23(a)(4) at this time.

### 3. *The Ascertainability of the Tower City Class*

▆▆ Next, Defendants argue that new evidence demonstrates that the Tower City class is not ascertainable, and therefore the class must be decertified. More specifically, Defendants contend that individualized review is required to determine (1) whether each class member's mortgage loan was "federally related" as required by RESPA; (2) whether each loan falls into RESPA's exemption for loans which were made for non-residential purposes; and (3) who paid for the title insurance, as actions under RESPA may only be brought by such persons. (Mot. to Decertify 13–19.)

The Court notes at the outset that Defendants made these same arguments to the Ninth Circuit. Answering Brief at 44–45; 50–52, *Edwards v. First Am. Title Ins.,* No. 08–56538 (9th Cir. Apr. 9, 2009), ECF No. 27 ("Answering Brief"). The Ninth Circuit implicitly rejected these arguments when it ordered the Tower City class certified and stated that individualized proof concerning the identity of class members and their damages "clearly do[es] not defeat class certification; every class action requires identification of class members, and most require individual proof of loss." Mem. Disposition at 3. Thus, under the doctrine of the law of the case, the Court will only reconsider these arguments pursuant to "an intervening change in **controlling** authority [or] new evidence." *Leslie Salt Co. v. United States,* 55 F.3d 1388, 1393 (9th Cir.1995) (emphasis added). It therefore follows that Defendants' contention that class decertification is appropriate because individualized review is necessary to determine who "paid" for the title insurance under RESPA must fail, as Defendants have not supported this argument with either new controlling authority or new evidence.[4]

As for Defendants' other two proffered arguments for decertification on the basis that individualized review is necessary to determine the identity of the Tower City class

---

**2.** The other action is *Empire Title Services, Inc. v. Fifth Third Mortgage Co.,* No. 10–CV–02208 (N.D.Ohio). There appears to have been no substantive activity in the case since January 2011, and no class has yet been certified.

**3.** Because the Court has denied certification of a nationwide class, the other thirty-seven title agencies at issue there no longer pose any potential conflict.

**4.** The Court does not find articles from 2006 and 2007 concerning the general availability of "no

cost" closings to be persuasive on the issue of who paid for the Tower City class members' title insurance policies. (Duvall Decl. ¶ 33, Ex. S.) In addition, this evidence was clearly available to Defendants when they made their argument to the Ninth Circuit in 2010. *See Wiener v. Dannon Co.,* 255 F.R.D. 658, 671 (C.D.Cal.2009) ("If **later evidence** disproves Plaintiffs' contentions that common issues predominate, the district court can at that state modify or decertify the class ....") (emphasis added).

members, Defendants aver that they have discovered new evidence in the form of Tower City closing files "that had been in the possession of Tower City (which was terminated by FATIC and is now out of business) and seized by the FBI. . . ." (Mot. to Decertify 1.) As pointed out by Plaintiff, however, Defendants' claim that this evidence was previously unavailable is dubious at best, as FATIC's agency agreement with Tower City provided that Tower City was to provide FATIC with access to all such files "at any reasonable time or times." (Decl. of Todd A. Jones in Supp. of Defs.' Mot. to Decertify Ex. A ("Agency Agreement") ¶¶ 3.C, 3.D, ECF No. 253–2.) The agency agreement also provided that, upon the termination of the agreement, FATIC still had the right to "make an examination of the pertinent books, records and papers" of Tower City "in the event of any litigation. . . ." (Agency Agreement ¶ 11.D.) Defendants therefore appear to have had the continual contractual right to access Tower City's closing files. Defendants' argument that the files were unavailable due to their seizure by the FBI is also not persuasive, as Defendants have not demonstrated that the seizure took place prior to their filing of an opposition to Plaintiff's previous class certification motions. Indeed, it appears likely that the seizure did not take place until later, as the Tower City's president was not indicted until November 19, 2008, six months after Defendants filed their opposition to Plaintiff's motion for certification of the Tower City Class. (*See* Decl. of Richard S. Gordon in Supp. of Defs.' Mot. to Decertify ("Gordon Decl.") Ex. 1, ECF No. 310–2.) Moreover, Defendants have surely been on notice that the Tower City files would prove significant to this litigation for some time now, and thus they have had every incentive to produce this evidence previously. (*See* Mem. in Opp'n to Pl.'s Mot. for Certification of Tower City Class 12, 14, May 5, 2008, ECF No. 107.)

Nevertheless, the Court will consider Defendants' "new" evidence on the merits in the interest of judicial economy, as it would be a waste of the resources of this Court and the parties to continue this litigation as a class action if the class ultimately proves to be unmanageable.

### a. *Determining if the Class Members' Loans were "Federally Related"*

RESPA applies only to "federally related mortgage loan[s]." 12 U.S.C. § 2607(a). Federally related mortgage loans are those which (1) are secured by a lien on residential property designed for one to four families; and (2) meet one of four additional criteria: (a) are made by a federally insured or regulated lender, (b) are "insured, guaranteed, supplemented, or assisted" by the federal government in connection with "a housing or related program" administered by the government, (c) are intended to be sold on the secondary mortgage market, or (d) are made by a creditor who "makes or invests in residential real estate loans aggregating more than $1,000,000 per year." 12 U.S.C. § 2602(1).

■ Defendants argue that, based on their review of the Tower City files, it will be impossible to determine if the Tower City class members' loans meet these criteria. (Mot. to Decertify 14–17.) For example, Defendants argue that reviewing the closing files of Edwards herself does not reveal whether her loan was federally related as required by the statute: Edwards's lender was not federally chartered or insured, her loan was apparently not federally subsidized, and information concerning whether Edwards's lender intended to sell Edwards's loan on the secondary mortgage market and whether Edwards's lender made loans aggregating $1,000,000 or more is not in the files. (Mot. to Decertify 16; Duvall Decl. ¶¶ 25–32.) Thus, Defendants argue that a detailed investigation of every class member's loan would be needed to determine whether their loan was federally related, and even then it may be impossible to determine whether their loan qualifies.

Defendants' argument needlessly complicates the inquiry into whether each class member's loan was "federally related."[5]

---

5. The Court does not find the reasoning of *Carter v. Welles–Bowen Realty, Inc.*, Nos. 05–CV–7427, 09–CV–400, 2010 WL 908464 (N.D.Ohio Mar. 11, 2010), cited by Defendants for the proposi-

Loans are "federally related" if they are made by a lender who "makes or invests in residential real estate loans aggregating more than $1,000,000 per year." 12 U.S.C. § 2602(1). Defendant FAC's spin-off company CoreLogic[6] maintains databases which can produce a list of "transactions for a particular lender between two specific dates in a specific date." (Gordon Decl. Ex. 4, at 31:19–32:10.) CoreLogic's databases also include the dollar amount of mortgage loans made.[7] (Gordon Decl. Ex. 4, at 35:24–36:3.) This information will yield a list of lenders who made mortgage loans of at least $1,000,000 in the aggregate. Thus, determining which class members' loans were "federally related" should not prove as difficult as Defendants claim, and in any case it does not appear to be a question "incapable of resolution...." (Mot. to Decertify 15.)

### b. Determining the Purpose of Class Members' Loans

■ Defendants also claim that the class is not ascertainable because RESPA exempts loans made "primarily for business, commercial, or agricultural purposes...." 12 U.S.C. § 2606(a)(1). Defendants aver that their review of the "new" Tower City files "yielded many files that likely involved loans made for a business purpose...." (Mot. to Decertify 18.) Thus, according to Defendants, the class "is not ascertainable, individualized issues predominate, and a class-wide trial would be unmanageable" because the purpose of each loan must be determined on a case-by-case basis. (Mot. to Decertify 18.)

As pointed out by Plaintiff, however, RESPA's business purpose exemption is subject to an exception of its own for "real property ... used or expected to be used as the principal dwelling of the consumer...." 12 C.F.R. § 226.3(b)(1)(i)(A). The exemption is therefore quite narrow. Furthermore, CoreLogic's databases also tracks the "land use" for any particular mortgage transaction, which should allow the parties to filter out those loans made for business-related purposes. (Gordon Decl. Ex. 4, at 59–61.)

Indeed, Defendants' own review of 296 Tower City closing files revealed only twenty-six loans "that could have been used for a business purpose." (Duvall Decl. ¶¶ 18, 22.) It therefore does not appear to the Court that determining the purpose of the class members' loans would be "unmanageable." See Robinson v. Fountainhead Title Grp., 252 F.R.D. 275, 294 (D.Md.2008) (holding that determining whether a loan was "federally related" under RESPA did not preclude class certification). If necessary, the purpose of class members' loans may be determined via a claim form sent to class members asking them "a single question to determine whether they are entitled to relief." See Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 674 (N.D.Cal.2011); Wilkerson v. Bowman, 200 F.R.D. 605, 610 (N.D.Ill.2001). Class members whose loans were made for a business purpose will simply be excluded from the class.

In sum, Defendants have not provided any evidence not before the Ninth Circuit that necessitates this Court's revisiting these issues at this time. Although ascertaining the identity of class members may not be simple, the Court is not convinced that it is impossi-

---

tion that determining whether loans are "federally related" for the purposes of RESPA defeats predominance under FRCP 23(b)(3), to be persuasive. The court in *Carter* appears to have conflated the issues of whether common issues predominate and whether the class is ascertainable. Whether the class members' loans were "federally related" is an issue of class ascertainability, and not predominance, as the class definition includes only those class members whose loans were "federally related." The cases cited by Defendants in their Supplemental Brief make the same error. Defendants also conflate these issues. (See, e.g., Reply Decertify 5.) In any event, the holdings of these cases are directly contrary to the Ninth Circuit's opinion in this case.

**6.** Although CoreLogic is not a party to this action, the necessary information should be discoverable pursuant to FRCP 34(c) and FRCP 45.

**7.** Plaintiff also points out that even if the dollar amounts for each lender's loans transactions are not discoverable, this Court can take judicial notice of the fact that mortgages are not made for less than a certain dollar amount, depending on the number of loans made by a particular lender in a given year under Federal Rule of Evidence 201, thereby establishing that a particular lender's loans were greater than $1,000,000 in aggregate. (Decertify Opp'n 15.)

ble or unmanageable. This is especially true given that Plaintiff has provided ample evidence that Defendants and related entities maintain extensive databases from which it should be possible to extract the necessary information. "A review of the relevant universe of loan files will thus reveal whether one is a class member or not. Because this inquiry will be finite and objective, the class is ascertainable." *Peel v. BrooksAm. Mortg. Corp.*, No. 8:11–cv–0079–JST (RNBx), 2012 WL 3808591 (C.D.Cal. Aug. 30, 2012).

### 4. Whether Tower City's Exclusive Referral Agreement Constitutes Common Proof of a Referral

Defendants claim that the Ninth Circuit was mistaken when it held that the exclusive referral agreement between Tower City and Defendants constituted common proof of the "action" element of a referral under RESPA because Defendants' new evidence shows that "Tower City issued a significant number of policies for … a competitor of FATIC, and that Tower City 'never' sold only FATIC policies—even during the so-called 'exclusivity' period." (Mot. to Decertify 20.) Defendants made this same argument to the Ninth Circuit, which rejected it. (*See* Answering Br. 12–13; Mem. Disposition 3–4.) Moreover, this argument rests on a fundamental misunderstanding of the Ninth Circuit's opinion and Plaintiff's theory of liability. The Ninth Circuit held that, for those Tower City customers who **were** referred to FATIC, the exclusive referral agreement serves as the common proof of the "action" element of a referral. In other words, the referral agreement was a "written action directed to a person [here, Tower City] which ha[d] the effect of affirmatively influencing the selection by any person [here, Tower City] of" FATIC as the title insurance underwriter. 24 C.F.R. § 3500.14(f)(1).

It is irrelevant that Tower City sometimes referred customers to title insurance underwriters other than FATIC, even if Tower City did so in violation of the referral agreement. Those customers are not a part of the class. Thus, Defendants' evidence does nothing to undermine Plaintiff's contention that, for those Tower City customers who were referred to FATIC, the referral agreement constitutes common proof of the "action" element, as held by the Ninth Circuit.

### 5. Defendants' Motion to Compel Arbitration

Defendants also contend that the Tower City class members' claims are covered by individual arbitration agreements contained in the insurance policies issued by FATIC. Thus, Defendants argue, the Court should compel the Tower City class members to arbitrate their claims, as this is a superior form of adjudication under FRCP 23(b)(3). Plaintiff counters that Defendants have waived their right to arbitration by litigating this case at every level of the federal judiciary over the past five years—and failing to even mention arbitration as a defense until after the Tower City class was certified by the Ninth Circuit, three years after the initial Complaint was filed. The Court agrees.

To prove that a waiver of arbitration exists, a party must demonstrate the following: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Letizia v. Prudential Bache Sec.*, 802 F.2d 1185, 1187 (9th Cir.1986) (internal quotations omitted). Any doubts as to waiver are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In this case, Defendants do not dispute that they had knowledge of the arbitration clause contained in the title insurance policies issued to the class members. Indeed, such an argument would not be credible, as Tower City "used standard form title insurance policies in Ohio" that included arbitration provisions since 1987. (Jones Decl. ¶ 8.)

As for whether Defendants have acted inconsistently with this right to arbitrate, Defendants have exploited every possible opportunity to litigate this case without even hinting that they planned to exercise their arbitration rights until they filed their Motion for Leave to File an Amended Answer in December 2010, more than three years after this action began. (Defs.' Mot. for Leave to File Am. Answer, Proposed Am. Answer

¶¶ 16, 19–20, Dec. 21, 2010, ECF No. 198–1.) Defendants only sought leave to amend their answer **after** the Ninth Circuit ordered the Tower City class to be certified. Defendants might have raised arbitration as a possible defense on any number of previous occasions: in two motions to dismiss, in Defendants' initial answer, in opposition to two class certification motions, on appeal to the Ninth Circuit, and in a petition to the Supreme Court for certiorari. Both parties have also engaged in extensive class discovery without Defendants' claiming that Plaintiff's action may be barred by an arbitration agreement. Even after asserting their right to arbitrate, Defendants still acted in a manner inconsistent with that right, as they filed a motion to stay the case pending the Supreme Court's ruling on Defendants' petition for certiorari, arguing that a stay was appropriate because "allowing this case to proceed to a possible class certification order" would result in "a waste of judicial and litigant resources...." (Defs.' Ex Parte Appl. for Stay of Proceeding 3, Mar. 7, 2011, ECF No. 229.)

Defendants rely on *In re TFT–LCD (Flat Panel) Antitrust Litigation*, No. M 07–1827SI, 2011 WL 1753784 (N.D.Cal. May 9, 2011), in support of their argument that they have not acted inconsistently with their right to arbitrate. (Compel Reply 1.) In *TFT–LCD*, the court held in an "extremely close" decision that, although the defendants had not made mention of their right to arbitrate until after a class was certified, defendants had not waived the right because defendants could not move to compel arbitration of the class members' claims until after the class was certified. *TFT–LCD*, 2011 WL 1753784, at *4.

The Court does not find the reasoning of *TFT–LCD* to be persuasive. It is true that Defendants likely could not have moved to compel arbitration of the Tower City class members' claims until after the class was certified. *See Saleh v. Titan Corp.*, 353 F.Supp.2d 1087, 1091 (S.D.Cal.2004) (holding that "putative class members are not parties to an action prior to class certification"). Nevertheless, Defendants could have asserted their intention to raise arbitration as a

defense at a much earlier stage in the proceeding. Indeed, even after the Ninth Circuit ordered the class certified in June 2010, Defendants' delayed bringing this motion until April 2011, after this Court denied Defendants' application for a stay. This conduct appears to be highly calculated—Defendants would obviously prefer that Plaintiff's claims be dismissed on the merits, as any such ruling may be used for the purposes of issue preclusion and precedential effect in subsequent actions. Defendants' conduct thus evinced "a conscious decision to continue judicial judgment on the merits." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir.1988). Only after it appeared to Defendants that this would not be possible did they file the instant motion. The Court cannot sanction such behavior; to do so would only encourage gamesmanship of this type in the future, resulting in further waste of judicial resources.

The Court finds the reasoning in *Kingsbury v. U.S. Greenfiber, LLC*, No. CF 08–00151–AHM (AGRx), 2012 WL 2775022 (C.D.Cal. Jun. 29, 2012), instructive. There the court held that the defendant waived his right to arbitrate when he actively litigated the case "for over four years." *Kingsbury*, 2012 WL 2775022, at *5. This litigation included discovery, a motion to remand, and four motions to certify a class. *Id.* The court reasoned that asserting a right to arbitrate was "an argument [defendant] was fully capable of raising in the context of the four motions for class certification. Yet [defendant] did not pursue its defense of arbitration. Its failure to do so was inconsistent with its arbitration rights." *Id.*

Just as in *Kingsbury*, Defendants here could have asserted their right, or at the very least their intention, to arbitrate at any number of points in the past five years. Their failure to do so is patently inconsistent with their attempt to exercise that right at this late juncture.

Finally, it is also not disputed that Defendants' failure to assert their right to arbitrate until now has prejudiced Plaintiff. First and most obviously, granting Defendants' Motion to Compel Arbitration would eliminate the class members' opportunity to

pursue these claims as a class action. Further, Defendants' delay in asserting their right to arbitrate has resulted in the expenditure of enormous costs by Edwards and class counsel in litigating this matter at every level of the federal judiciary over the past five years, as well as thousands of hours of attorney time. Forcing the class to arbitrate now would result in those costs being stranded. In short, there is no question that Plaintiff has "relied to [her] detriment on [Defendants'] failure" to assert their right to arbitration before now. *Van Ness,* 862 F.2d at 759.

The Court therefore finds that Defendants have waived their right to arbitration.

### 6. *The Standing of the Tower City Class Members*

Finally, in their Supplemental Brief Defendants argue that the Tower City class is overbroad because it includes class members who lack standing, as it includes "(1) persons who suffered no violation of RESPA because their loans were not within the statute's ambit (*e.g.,* 'federally related') and (2) persons who did not pay for title insurance." (Supp. Mot. to Decertify 4.) This argument is meritless.

Defendants cite to a number of cases where class certification was denied because the class included individuals who had not suffered a violation of the statute at issue. *See, e.g., Gass v. Best Buy, Co.,* 279 F.R.D. 561, 568 (C.D.Cal.2012). These cases are inapposite, as they stand only for the axiomatic proposition that "every class should **be defined** so as to exclude members lacking standing." *Webb. v. Carter's Inc.,* 272 F.R.D. 489, 497 (C.D.Cal.2011). The class definition here does **not** include persons whose loans were not within the statute's ambit, as it specifically states that it includes only those customers of Tower City whose loans were "federally related." Class members whose loans are not federally related will be excluded from the class. As for Defendants' argument that the class includes members who lack standing because they did not pay for title insurance, that argument also fails, as the Ninth Circuit heard and rejected this argument, and Defendants present no new controlling precedent or evidence that warrants this Court revisiting the issue.

### III. *RULING*

For the foregoing reasons, Defendants' Motions to Decertify the Tower City (Ohio) Class and to Compel Arbitration are **DENIED.**

IT IS SO ORDERED.